IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


GREGORY G. HALL,

            Plaintiff,

v.                          //   CIVIL ACTION NO. 1:14CV90
                                 (Judge Keeley)

CITY OF CLARKSBURG, a
municipal corporation and
political subdivision,
MARTIN G. HOWE, JAMES C. HUNT,
RALPH Pedersen, MARGARET BAILEY,
ADAM BARBERIO, H. KEITH KESLING,
and JONATHAN R. DAVIS,

            Defendants.


MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT [37]

Pending before the Court is the motion to dismiss the amended complaint (dkt. no. 37) filed by the defendants, the City of Clarksburg, Martin G. Howe ("Howe"), James C. Hunt ("Hunt"), Ralph Pedersen ("Pedersen"), Margaret Bailey ("Bailey"), Adam Barberio ("Barberio"), H. Keith Kesling ("Kesling"), and Jonathan R. Davis ("Davis"). For the following reasons, the Court **DENIES** the motion.

## I. BACKGROUND

The Court's recitation of the facts is taken from the amended complaint of the plaintiff, Gregory G. Hall ("Hall"). As it must, at this early stage of the proceedings, the Court construes those

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS

facts in the light most favorable to the nonmoving party.[1]  See
De'Ionta v. Johnson, 708 F.3d 520, 524 (4th Cir. 2013).

Hall alleges that he is heavily involved in real estate within
West Virginia, and that, at one time, he owned numerous properties
in Harrison County. He asserts that he rented these properties to
"low income, elderly and disabled tenants."  (Dkt. No. 35 at 4).
The dispute in this case arises from the alleged efforts of the
City of Clarksburg and its management employees to circumvent the
law in order to demolish residential properties such as those owned
by Hall. Hall further alleges that the City of Clarksburg's
management employees stood to profit -- financially and politically
-- from their purportedly unlawful conduct.

In 2000, the West Virginia Housing Development Fund ("WVHDF")
allocated funding for its Demolition Loan Program ("DLP"), designed
to "provide municipalities with financial resources to demolish
older, residential rental properties, many of which were being
subsidized under various HUD programs."  (Dkt. No. 35 at 10)
(internal quotation marks omitted).  The DLP explicitly recognized
that "[h]omes which remain owner-occupied and in good condition

---

[1]  The Court notes, however, that allegations in Hall's amended
complaint are often disjointed and have impacted the Court's ability to
recite accurately and completely the facts of the case.

2

suffer from lower appraisal values due to the condition of their neighbors." (Dkt. No. 35 at 10).

Hunt, who was an elected member of the City of Clarksburg Council (the "City Council") until 2012, was also a DLP area manager responsible for projects in the City of Clarksburg. As such, he informed other public officials in the City of Clarksburg about the DLP and "the availability of public funds to demolish residential rental properties." (Dkt. No. 35 at 12).

In September 2000, Hunt worked with Howe, the City of Clarksburg's manager, to apply to the WVHDF for a $250,000 loan for the demolition of fifty homes under the DLP. In December 2000, the WVHDF awarded the City of Clarksburg $150,000 for the project. Since then, the City of Clarksburg, with the assistance of Hunt, has applied for five additional DLP loans and received loan awards totaling $1,450,000.

Hall alleges that "Hunt benefitted personally as a result of his public employment as WVHDF's Area Manager for Clarksburg and his direct involvement as Defendant Clarksburg's elected public official and member of its council." (Dkt. No. 35 at 19). He further alleges that "Hunt personally benefited [sic] from his public employment and elected position by promoting himself as an expert consultant for hire to other public entities considering the

use of public funds for urban renewal projects and demolition of dilapidated residential properties." (Dkt. No. 35 at 19). Finally, he alleges that "Hunt benefited [sic] others by directing and encouraging official actions be taken by Defendant Clarksburg in its continued participation in WVHDF's Demolition Loan Program and the demolition of hundreds of residential properties." (Dkt. No. 35 at 19).

In June 2001, the City of Clarksburg was "unable to meet the loan requirements imposed upon it by the WVHDF,"[2] and requested the assistance of the Clarksburg Urban Renewal Authority ("CURA").[3] CURA is a public body that the City Council created in 1961, pursuant to West Virginia's Urban Renewal Authority Law, W. Va. Code § 16-18-1, et seq. CURA, in turn, created the Urban Renewal Plan for Demolition of Dilapidated Residential Structures for the City of Clarksburg (the "Urban Renewal Plan").

Hall alleges that the Urban Renewal Plan is illegal because it failed to identify "the area of the urban renewal project," in

---

[2] Hall's amended complaint does not specify which requirements were too stringent.

[3] Although Hall's amended complaint says little regarding the specifics of the arrangement between the City of Clarksburg and CURA, it does allege that the City of Clarksburg assigned the obligation on the loan to CURA.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS**

accordance with state statute.[4]  (Dkt. No. 35 at 13) (internal quotation marks omitted).  Rather, he contends, the Urban Renewal Plan "merely identified the project area as including 'scattered sites located within the incorporated area of Clarksburg, at which dilapidated residential structures exist, which sites have been declared by Clarksburg to be blighted areas in need of redevelopment.'" (Dkt. No. 35 at 13).  Furthermore, Barberio, the City of Clarksburg's code enforcement officer, as well as Hunt and Howe, allegedly "knew, or should have known, that CURA's ad hoc urban renewal plan was unlawful."  (Dkt. No. 35 at 13).

Hall also alleges that the City of Clarksburg and the City Council unlawfully amended the City Ordinances by: (1) authorizing Howe, rather than the City Council, to appoint members to the Building Code Appeals Board ("BCAB"); (2) reducing the membership of the BCAB from five to three members; (3) granting building inspectors unreasonable right of entry and inspection to dwellings; (4) blocking the opportunity for property owners to repair their properties while under a demolition order; and (5) removing the City of Clarksburg's notice requirement of its right to file a lien against any property subject to code enforcement action.

---

[4] The statute cited by Hall is W. Va. Code § 16-18-1, et seq.

MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS

Also, according to Hall's amended complaint, the City of Clarksburg's building code officials and building inspectors were not trained, qualified, or certified in accordance with W. Va. Code § 87-7-1, <u>et seq.</u> Hall further claims that the City of Clarksburg, Howe, Bailey, Hunt, Barberio, Kesling, Davis, and Pedersen[5] knew or should have known of this fact.

Finally, Hall alleges that, between July 2006 and August 2013, Barberio and his two subordinate building code officials, Kesling and Davis, ordered to be demolished, or scheduled for demolition, properties Hall owned at ten separate addresses. These actions, according to Hall, violated the West Virginia Building Code, and the defendants allegedly relied on false and misleading claims of building code violations to accomplish demolition.

Hall further contends that this conduct was sanctioned by Bailey, the City of Clarksburg's mayor at the time, when she signed a resolution "authorizing and empowering Defendant Clarksburg's officials and employees to continue participating in WVHDF's Demolition Loan Program and to receive its loan award in the amount of $400,000." (Dkt. No. 35 at 18). According to Hall, the

---

[5] Pedersen was a WVHDF employee and one of three appointed members of the BCAB.

demolition of his property at 531 Milford Street "personally benefitt[ed] Defendant Bailey." (Dkt. No. 35 at 19).

In December 2013 and January 2014, Hall and several other affected property owners filed complaints against the defendants with the West Virginia Fire Commission. In June 2014, the Fire Commission issued its own "Consolidated Complaint and Notice of Hearing" against several defendants, including the City of Clarksburg, Barberio, Kesling, and Davis. It determined that these defendants "knowingly utilized an unlawful building code, through the actions of unlawful [building code officials], to selectively target specific properties and property owners, to divest them of real and personal property without adequate due process of law."[6] (Dkt. No. 35-1 at 5). Additionally, the defendants "utilized the Clarksburg building code program to directly and/or indirectly enrich themselves and others through the use of public funds and the unlawful building code program." (Dkt. No. 35-1 at 5).

Hall originally filed his complaint in this Court on May 30, 2014. The parties then sought a stay, which for good cause, the Court granted. Subsequently, however, they requested that the Court lift the stay. The Court lifted the stay and granted Hall's request

---

[6] Hall has adopted the Fire Commission's allegations of fact and conclusions of law in his amended complaint. (Dkt. No. 35 at 20).

for leave to amend his complaint in order to address the deficiencies outlined in the defendants' motion to dismiss.[7] Hall filed his amended complaint on February 20, 2015.

Hall's amended complaint asserts five causes of action. Three involve claims arising under 42 U.S.C. § 1983, but alleging different theories of liability, including municipal liability ("Count One"), official, individual, and supervisory liability ("Count Two"), and conspiracy liability ("Count Three"). Count Four alleges liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1964(c). Finally, Count Five seeks a declaratory judgment that "all amounts assessed against [Hall] for demolition costs, assessments and fines by Defendant Clarksburg are improper, unlawful, and not due and owing." (Dkt. No. 35 at 31).

On March 12, 2015, the defendants moved to dismiss Hall's amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6). In their motion, they contend: (1) that Hall did not utilize the proper appellate procedure to challenge the defendants' actions; (2) that Hall's claims are insufficiently pled; and (3) that Hall's claims are time-barred by both the applicable statute of limitations and

---

[7] The Court denied as moot the defendants' original motion to dismiss.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS**

the doctrine of laches.[8] The motion is fully briefed and ripe for review.

## II. STANDARD OF REVIEW

In reviewing the sufficiency of a complaint, a district court "'must accept as true all of the factual allegations contained in the complaint.'" Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). However, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Indeed, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). In considering whether the facts alleged are sufficient, "a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" Anderson, 508 F.3d at 188 (quoting Twombly, 550 U.S. at 547).

---

[8] The defendants initially argued that Hall lacks standing to assert any claims on behalf of other property owners. In his response memorandum, however, Hall explains that his amended complaint "asserts no claims on behalf of others, and to the extent others are mentioned as being damaged by the Defendants' actions, such inclusion in Plaintiff's First Amended Complaint is for illustrative purposes . . . ." (Dkt. No. 42 at 15-16).

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)).

### III. DISCUSSION

**A.     Sufficiency of the Allegations**

**1. Count One: Municipal Liability Under 42 U.S.C. § 1983**

Under Monell v. Dep't of Soc. Svcs. of City of New York, 436 U.S. 658, 690 (1978), municipalities "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  As the Fourth Circuit has explained,

> [a] municipality is not subject to section 1983 liability
> simply because a claimant is able to identify conduct
> attributable to the municipality.  Rather, "[t]he
> plaintiff must also demonstrate that, through its
> <u>deliberate</u> conduct, the municipality was the 'moving
> force' behind the injury alleged." <u>Bd. of Cnty. Comm'rs
> of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 404 (1997).
> Accordingly, to impose section 1983 liability on a
> municipality, a claimant must first show that "a
> municipal decision reflects <u>deliberate indifference</u> to
> the risk that a violation of a particular constitutional
> or statutory right will follow the decision." <u>Id.</u> at
> 411.  If a section 1983 claimant can demonstrate the
> requisite degree of culpability, she must then show "a
> direct causal link between the municipal action and the
> deprivation of federal rights." <u>Id.</u> at 404.

<u>Riddick v. Sch. Bd. of City of Portsmouth</u>, 238 F.3d 518, 524 (4th Cir. 2000) (alterations and emphasis in original).

Here, Hall alleges that the City of Clarksburg, "by Codified Ordinances adopted in 2003 and thereafter amended and adopted in April 2009, established its official building code enforcement policies, which, when enforced by its officials and employees, caused deprivations of Plaintiff's property rights, protected by the Fourth, Fifth, and Fourteenth Amendments." (Dkt. No. 35 at 20).  Through these purportedly unlawful ordinances, Hall alleges that the City of Clarksburg permitted building code officials and inspectors, who were not properly trained, qualified, or certified under state law, to issue citations, condemnation orders, and demolition orders against his properties.  Moreover, Hall alleges

11

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS**

that the City of Clarksburg and its officials "were deliberately indifferent to the fact that the building code officials and building inspectors were not properly trained, qualified, and certified." (Dkt. No. 35 at 21).

In addition to alleging deliberate indifference by the City of Clarksburg, Hall has alleged that the demolition of his properties, and thus the deprivation of his constitutional rights,[9] occurred "[a]s a direct and proximate result of Defendant Clarksburg's amendments to its building code enforcement ordinances in 2009, and the established practices, manner, and methods utilized by Defendant Clarksburg in the enforcement of the same." (Dkt. No. 35 at 23). Furthermore, "[a]s a direct and proximate result of the adoption and enforcement of Defendant Clarksburg's unlawful and constitutionally deficient building code enforcement ordinances, and its failure to hire and train qualified and certified building code officials and building inspectors, . . . [Hall] suffered the deprivation of constitutionally protected rights and interest." (Dkt. No. 35 at 24-25).

Based on these allegations, the Court cannot find that Hall's § 1983 claim for municipal liability is insufficiently pled. His

---

[9] Hall specifically alleges that the conduct complained of violated his rights under the Fourth, Fifth, and Fourteenth Amendments.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS**
_____

allegations create a plausible claim that the City of Clarksburg, through deliberate conduct, was the moving force behind the purported violations of his constitutional rights.

### 2. Count Two: Official, Individual, and Supervisory Liability Under 42 U.S.C. § 1983

Because the City of Clarksburg can be sued under § 1983, so too can the city officials. See Monell, 436 U.S. at 690 n.55 ("[O]ur holding today that local governments can be sued under § 1983 necessarily decides that local government officials sued in their official capacities are 'persons' under § 1983 in those cases in which . . . a local government would be suable in its own name."). The same applies to land use officials. See Gardner v. City of Baltimore Mayor and City Council, 969 F.2d 63 (4th Cir. 1992); Scott v. Greenville County, 716 F.2d 1409 (4th Cir. 1983).

Furthermore, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." Hafer v. Melo, 502 U.S. 21, 25 (1991) (emphasis in original); see also Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995). Here, Hall seeks compensatory damages[10] from Barberio, Kesling, and Davis because

_____

[10] Compensatory damages are available for § 1983 claims only when a defendant is sued in a personal (as opposed to official) capacity. See Suarez Corp. Indus. v. McGraw, 125 F.3d 222, 229 (4th Cir. 1997).

they "violated [his] Fourth, Fifth, and Fourteenth Amendment rights." (Dkt. No. 35 at 25). Importantly, he alleges at least ten specific occasions on which these three defendants violated his rights. (Dkt. No. 35 at 16-17).

Finally, it is well settled that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

> We have set forth three elements necessary to establish supervisory liability under § 1983: (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (internal quotation marks and citations omitted).

Count Two of Hall's amended complaint is aimed specifically at Howe, Barberio, Kesling, and Davis. Howe supervised Barberio, who, in turn, supervised Kesling and Davis. Hall alleges that Barberio, Kesling, and Davis violated his Fourth, Fifth, and Fourteenth Amendment rights by "knowingly and intentionally issu[ing] numerous false and unlawful Citations, Notices of Violation, and

Condemnation and Demolition Orders against [Hall]." (Dkt. No. 35 at 25). He also alleges that "Howe, in his official and individual capacities, was the duly authorized supervisor of Defendant Barberio, Defendant Kesling, and Defendant Davis and their building code enforcement activities performed as employees of Defendant Clarksburg's Code Enforcement Office." (Dkt. No. 35 at 25-26).

In addition, Hall alleges that "Howe knew, or should have known, that Defendant Barberio, Defendant Kesling, and Defendant Davis were not properly trained, qualified, and certified to perform their duties . . . , and that their regular employment duties in the Code Enforcement Office would result in unlawful code enforcement activities and other unconstitutional conduct . . . ." (Dkt. No. 35 at 26). Hall continues by alleging that "Howe failed to take required corrective action and steps to prevent such conduct," and that, as a direct and proximate result, "Plaintiff and many other property owners . . . suffered the deprivation of their constitutionally protected rights and interests in their real property, and sustained damages . . . ." (Dkt. No. 35 at 26). Hall has sufficiently pleaded his § 1983 claim under theories of official, individual, and supervisory liability.

### 3. Count Three: Conspiracy Liability Under 42 U.S.C. § 1983

"To establish a conspiracy under § 1983, [a plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [the plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996). At the pleading stage, factual allegations, rather than evidence, will suffice for a claim to withstand a motion to dismiss. See, e.g., Clatterbuck v. City of Charlottesville, 708 F.3d 549, 553 (4th Cir. 2013).

Here, Hall alleges that the defendants agreed "to act in concert with each other to deprive Plaintiff of his constitutionally protected rights in his real property; and one or more members of the conspiracy performed unlawful acts in furtherance thereof." (Dkt. No. 35 at 27). One of several overt acts alleged is the issuance of citations, notices of violations, and condemnation and demolition orders. (Dkt. No. 35 at 21-22). Also alleged is the defendants' intentional amendment of City Ordinances to remove procedural safeguards for the demolition of Hall's properties. (Dkt. No. 35 at 21). Based on these allegations, Hall has sufficiently pled a claim for conspiracy liability under § 1983.

### 4. Count Four: Racketeering Liability Under 18 U.S.C. §§ 1962(c) and 1964(c)

Under RICO, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  Moreover, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).

In order to state a claim for relief under § 1962(c), Hall must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); see also Dickerson v. TLC The Laser Eye Ctr. Inst., Inc., 493 Fed. App'x 390, 394 (4th Cir. 2012) (per curiam). If Hall ultimately prevails on his RICO claim, he "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ."  18 U.S.C. § 1964(c).

Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and

any union or group of individuals associated in fact although not a legal entity." § 1961(4). Hall alleges that the City of Clarksburg is a "municipal corporation," and therefore "was and is an enterprise as that term is defined in 18 U.S.C. § 1961(4)." (Dkt. No. 35 at 4, 27).

RICO provides a lengthy definition of "racketeering activity." In relevant part, that definition includes "any act which is indictable under any of the following provisions of title 18, United States Code: . . . section 1341 (relating to mail fraud), [and] section 1343 (relating to wire fraud)." § 1961(1)(B). Because fraud provides the basis of Hall's theory of racketeering, his claim is subject to the particularity requirement of Fed. R. Civ. P. 9(b). See Robinson v. Fountainhead Title Grp. Corp., 252 F.R.D. 275, 279-80 (D. Md. 2008) ("Where the alleged RICO predicates are rooted in fraud, a plaintiff must comply with the heightened pleading standards of Rule 9(b).").

Hall alleges that, in pursuit of their scheme to defraud him, the defendants "used wire communications and facilities via telephone, facsimile, emails, and the United States mails to apply for, submit documents relating to, and receive records and funds from WVHDF, all with regard to Defendant Clarksburg's participation in the [DLP]." (Dkt. No. 35 at 28). More specifically, he alleges

that, "[o]n each occasion when Defendant Clarksburg made a loan application to the WVHDF, its managers, including Defendant Howe, submitted the application and supporting documentation to WVHDF by utilizing the United States mails." (Dkt. No. 35 at 14). Additionally, "[o]n each occasion that Defendant Clarksburg received [DLP] funds from WVHDF, it did so by use of wire transmission and facilities and/or the United States mails." (Dkt. No. 35 at 14).

Although these allegations satisfy the particularity requirement and meet the definition of racketeering activity, Hall also must allege a "pattern," meaning "at least two acts of racketeering activity." § 1961(5). He has done so. Indeed, Hall plausibly alleges that "numerous and continuous use of wire communications and facilities and the United States mails by these Defendants . . . establish[] the predicate acts constituting a pattern of racketeering activity." (Dkt. No. 35 at 28-30). Moreover, he specifically alleges the transmittal of information by the defendants to the WVHDF via wire communications, and their communication of citations, notices, and orders to Hall through the United States mail. (Dkt. No. 35 at 29). Therefore, at the pleading stage, Hall's allegations sufficiently state a claim for RICO liability.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS**

---

### 5. Count Five: Declaratory Judgment Under 28 U.S.C. § 2201

In Count Five, pursuant to 28 U.S.C. § 2201(a), Hall seeks a declaration from the Court that "all amounts assessed against him for demolition costs, assessments and fines by Defendant Clarksburg are improper, unlawful, and not due and owing." (Dkt. No. 35 at 31). The purpose of the claim in Count Five is not entirely clear; as pleaded, however, it suggests that the City of Clarksburg has sought money from Hall, who has refused to pay because he believes he is not legally required to do so. See Collin Cnty. Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN), 915 F.2d 167, 171 (5th Cir. 1990) ("[I]t is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action."). Viewing such facts in the light most favorable to Hall, his declaratory judgment claim presents a case of actual controversy between the parties, which the Court declines to dismiss.

### B.   Statute of Limitations/Laches

In their motion to dismiss, the defendants argue that the majority of Hall's amended complaint is time-barred under both the two-year statute of limitations provided by W. Va. Code § 55-2-

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS**

12(a) and the doctrine of laches,[11] both of which are affirmative

defenses identified in Fed. R. Civ. P. 8(c). As discussed above,

"a motion to dismiss filed under Federal Rule of Procedure 12(b)(6)

. . . generally cannot reach the merits of an affirmative defense,

such as the defense that the plaintiff's claim is time-barred."

Goodman, 494 F.3d at 464. The only exception applies "in the

relatively rare circumstances where facts sufficient to rule on an

affirmative defense are alleged in the complaint." Id.

This case does not present one of the "relatively rare

circumstances" described in Goodman. In response to the

defendants' reliance on the statute of limitations, Hall contends

that the continuing violation doctrine[12] rescues his amended

complaint. Regarding laches, Hall argues that the defendants are

unable to establish either undue delay or prejudice. These issues

---

[11] Notably, laches is typically a state law doctrine that applies to claims in equity. See Dunn v. Rockwell, 689 S.E.2d 255, 267 n.11 (W. Va. 2009). Notwithstanding, the defendants contend that "[a]ny claims associated with the demolition of the Plaintiff's properties are barred by the doctrine of laches." (Dkt. No. 38 at 13). Because Hall seeks damages under § 1983 and RICO, it is not clear that West Virginia's laches defense could bar his claims in the manner argued by the defendants.

[12] See A Society Without a Name v. Virginia, 655 F.3d 342, 348-49 (4th Cir. 2011) (recognizing that, in some circumstances, the continuing violation doctrine can apply to § 1983 claims).

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS**

require further evidentiary development before the Court may properly rule on them.

## C.    Failure to Follow Proper Appellate Procedure

Relying on Article 1720.05 of the City of Clarksburg's municipal code, the defendants argue that Hall was required to appeal any building code enforcement decision to the BCAB. If he received an unfavorable ruling, the defendants contend, he then was required to file a petition for a writ of certiorari with the Circuit Court of Harrison County for review of the BCAB's decision. See W. Va. Code § 53-3-2. Because Hall filed a complaint directly in federal district court, the defendants argue that his claims are barred for failure to exhaust the available administrative and judicial appellate procedures.

Hall counters by relying on precedent from the Supreme Court of the United States for the proposition that "a Plaintiff bringing a suit pursuant to 42 U.S.C. § 1983 is not required to exhaust state administrative remedies before filing suit in federal court." (Dkt. No. 42 at 6) (citing Patsy v. Bd. of Regents of States of Fla., 457 U.S. 496, 516 (1982); Steffel v. Thompson, 415 U.S. 452, 472-73 (1974); McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill., 373 U.S. 668, 671 (1963); Monroe v. Pape, 365 U.S.

167, 183 (1961)).  Hall contends that this rule applies squarely to his claims.

As an initial matter, there is some dispute about whether Hall actually filed an appeal with the BCAB.  His amended complaint alleges that

> during the November 2007, Building Code Appeal Board meeting, Defendant Pedersen, who was at that time the chairperson of the Board, said to the Plaintiff, "Mr. Hall, I don't like you."  In a subsequent Building Code Appeal Board meeting, held on May 21, 2008, during which Plaintiff's property at 439/441 E. Pike Street, Clarksburg, was on the agenda for discussion, Defendant Pedersen stated to the Plaintiff, "Mr. Hall, I've been waiting for this all morning."  Defendant Pedersen's [sic] repeatedly expressed disparaging remarks toward the Plaintiff over the course of dealings in this matter, including at one meeting where Defendant Pedersen asked of Plaintiff, "what does E.M.T. Properties stand for? 'Empty Properties'?".

(Dkt. No. 35 at 22).

Hall urges that this allegation represents "specific examples of incidences in which he did appeal to the [BCAB]."  (Dkt. No. 42 at 8).  On the other hand, the defendants contend that the allegation "speak[s] nothing to Plaintiff's attempts to appear before the [BCAB]."  (Dkt. No. 43 at 3).

It is axiomatic that a court "must view the facts alleged in the light most favorable to the plaintiff."  United States ex rel. Nathan v. Takeda Pharms. N.A., Inc., 707 F.3d 451, 455 (4th Cir.

2013). Here, under that standard, it is not difficult to determine that Hall has alleged that he did, in fact, appeal the allegedly unlawful building code enforcement decisions to the BCAB. Consequently, the relevant issue becomes whether any subsequent failure to pursue a writ of certiorari from the Circuit Court of Harrison County precludes his federal claims in this case.

In Timmons v. Andrews, 538 F.2d 584, 585 (4th Cir. 1976), city housing officials in Columbia, South Carolina ordered the demolition of the plaintiff's buildings because they were "unfit for habitation." As here, the plaintiff had exhausted her administrative remedies, but had not sought a petition for review from the South Carolina state court. Id. at 585-86. Nevertheless, she sued the city, the mayor, the city manager, and the housing board of adjustments and appeals in federal district court, alleging that the demolition of her properties would violate her constitutional rights. Id. at 585.

The defendants moved to dismiss the case based on abstention, contending that the plaintiff had failed to exhaust her available state remedies. Id. The district court agreed and dismissed the case in order to "allow it to proceed through the courts of the State of South Carolina," even though the plaintiff could no longer pursue a state action, as the time for doing so had expired. Id.

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS**

On appeal, the Fourth Circuit vacated the district court's dismissal, explaining that "Mrs. Timmons has . . . exhaust[ed] her administrative remedies.  Having done so, she is not obliged to exhaust her judicial remedies by seeking review of the administrative proceedings in the state courts."  <u>Id.</u> at 586; <u>see also</u> <u>Front Royal & Warren Cnty. Indus. Park Corp v. Town of Front Royal, Va.</u>, 135 F.3d 275, 283 n.3 (4th Cir. 1998) ("State remedies need not be exhausted in order to pursue a § 1983 action claiming a violation of [the right to due process and equal protection].").[13]

  <u>Timmons</u> undermines the defendants' assertion that the doctrine of exhaustion bars Hall's § 1983 claims.  Likewise, any argument that Hall's RICO claim is barred by his purported failure to exhaust state remedies deserves little credit.  Courts have consistently rejected this contention out of hand.  <u>See</u> <u>Glickstein v. Sun Bank/Miami, N.A.</u>, 922 F.2d 666, 674 (11th Cir. 1991) ("The

---

[13] The parties' briefs also include a peculiar thrust-and-parry, in which the defendants suggest that the Individuals with Disabilities Education Act ("IDEA") somehow undoes the general rule, applicable here, that a § 1983 claim is not barred by the exhaustion doctrine.  <u>See</u> <u>Bess v. Kanawha Cnty. Bd. of Educ.</u>, No. 2:08CV1020, 2009 WL 3062974, at *4 (S.D.W. Va. Sept. 17, 2009) ("But when a plaintiff raises alternative claims that are also cognizable under the IDEA, the plaintiff is 'required to exhaust [IDEA] administrative remedies to the same degree as would have been required had the suit been brought under the [IDEA].'") (quoting <u>Doe v. Alfred</u>, 906 F. Supp. 1092, 1099 (S.D.W. Va. 1995)).  After considering the parties' colloquy, the Court finds it is not relevant to the issue at bar.

proposition that state 'exhaustion' rules could bar the federal RICO claims is not one that requires much discussion."); Dickson v. Chicago Allied Warehouses, Inc., No 90C6161, 1991 WL 60571, at *2 (N.D. Ill. Apr. 15, 1991) ("Plaintiffs correctly observe that there is no requirement that state remedies be exhausted before a RICO claim may be brought."); Gunther v. Dinger, 547 F. Supp. 25, 27 (S.D.N.Y. 1982) ("The argument is frivolous on its face.").

## IV. CONCLUSION

After careful consideration of the issues raised by the parties, for the reasons discussed, the Court **DENIES** the defendants' motion to dismiss.

It is so **ORDERED.**

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: May 1, 2015.

                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE