IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

GREGORY G. HALL,

        Plaintiff,

v.                //    CIVIL ACTION NO. 1:14CV90
                            (Judge Keeley)

CITY OF CLARKSBURG, a
municipal corporation and
political subdivision,
MARTIN G. HOWE, JAMES C. HUNT,
RALPH PEDERSEN, MARGARET BAILEY,
ADAM BARBERIO, H. KEITH KESLING,
and JONATHAN R. DAVIS,

        Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129,
131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

On September 6, 2015, the Court heard oral argument on the
parties' competing motions for summary judgment. In accord with the
reasons stated on the record, the Court **GRANTS** all of the
defendants' motions for summary judgment (dkt. nos. 121. 123. 125.
127, 129, 131, 133, and 135), and **DENIES** the plaintiff's motion for
summary judgment (dkt. no. 137).

## I. BACKGROUND

A.   **Factual Background**

Gregory G. Hall ("Hall") was involved in real estate investing
within West Virginia and, at one time, owned numerous properties in
Harrison County. His complaint asserted that he rented these
properties to "low income, elderly and disabled tenants." (Dkt. No.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

35 at 4). The dispute in this case arises from the efforts of the City of Clarksburg ("City") and its management employees to allegedly circumvent the law in order to demolish residential properties such as those owned by Hall. Hall further alleged that the City's management employees stood to profit — financially and politically — from their purportedly unlawful conduct.

In 2000, the West Virginia Housing Development Fund ("WVHDF") allocated funding for its Demolition Loan Program ("DLP"), which was designed to "provide municipalities with financial resources to demolish older, residential rental properties, many of which were being subsidized under various HUD programs." (Dkt. No. 35 at 10) (internal quotation marks omitted). The DLP explicitly recognized that "[h]omes which remain owner-occupied and in good condition suffer from lower appraisal values due to the condition of their neighbors." (Dkt. No. 35 at 10).

James C. Hunt ("Hunt"), who was an elected member of the City Council until 2012, was also a DLP area manager responsible for projects in the City. As such, he informed other City officials about the DLP and "the availability of public funds to demolish residential rental properties." (Dkt. No. 35 at 12).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

In September 2000, Hunt worked with City Manager Martin G. Howe ("Howe") to apply to the WVHDF for a $250,000 loan for the demolition of fifty homes under the DLP. In December 2000, the WVHDF awarded the City $150,000 for the project. With the assistance of Hunt, the City applied for five additional DLP loans and received loan awards totaling $1,450,000. Hall has alleged that Hunt benefitted personally from his involvement with the WVHDF, his position as an elected official, and from his membership on the City Council. (Dkt. No. 35 at 19). He has further alleged that Hunt personally benefitted by promoting himself as an expert consultant to other public entities contemplating similar urban renewal projects. (Dkt. No. 35 at 19).

In June 2001, the City was "unable to meet the loan requirements imposed upon it by the WVHDF,"[1] and requested the assistance of the Clarksburg Urban Renewal Authority ("CURA").[2] CURA is a public body that the City Council created in 1961, pursuant to West Virginia's Urban Renewal Authority Law, W. Va.

---

[1] Hall's amended complaint does not specify which requirements were too stringent.

[2] Although Hall's amended complaint says little regarding the specifics of the arrangement between the City and CURA, it does allege that the City assigned the obligation on the loan to CURA.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

Code § 16-18-1, et seq. CURA, in turn, created the Urban Renewal Plan for Demolition of Dilapidated Residential Structures for the City of Clarksburg (the "Urban Renewal Plan").

Hall has alleged that the Urban Renewal Plan was illegal because it failed to identify "the area of the urban renewal project" in accordance with state statute.[3] (Dkt. No. 35 at 13) (internal quotation marks omitted). Rather, he contends that it "merely identified the project area as including 'scattered sites located within the incorporated area of Clarksburg, at which dilapidated residential structures exist, which sites have been declared by Clarksburg to be blighted areas in need of redevelopment.'" (Dkt. No. 35 at 13). Furthermore, Adam Barberio ("Barberio"), the City's code enforcement officer, as well as Hunt and Howe, allegedly "knew, or should have known, that CURA's ad hoc urban renewal plan was unlawful." (Dkt. No. 35 at 13).

Hall also has alleged that the City and the City Council unlawfully amended the City Ordinances by: (1) authorizing Howe, rather than the City Council, to appoint members to the Building Code Appeals Board ("BCAB"); (2) reducing the membership of the

---

[3] The statute cited by Hall is W. Va. Code § 16-18-1, et seq.

4

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129,
131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

BCAB from five to three members; (3) granting building inspectors unreasonable right of entry and inspection to dwellings; (4) blocking the opportunity for property owners to repair their properties while under a demolition order; and (5) removing the City's notice requirement of its right to file a lien against any property subject to code enforcement action.

According to Hall's amended complaint, the City's building code officials and building inspectors were not trained, qualified, or certified in accordance with W. Va. Code § 87-7-1, <u>et seq.</u> Moreover, the City, Hunt, Howe, Barberio, Margaret Bailey ("Bailey"), H. Keith Kesling ("Kesling"), Jonathon R. Davis ("Davis"), and Ralph Pedersen ("Pedersen")[4] allegedly all knew or should have known of this fact. Furthermore, between July 2006 and August 2013, Barberio and his two subordinate building code officials, Kesling and Davis, allegedly ordered or scheduled the demolition of properties Hall owned at ten separate addresses. According to Hall, these actions violated the West Virginia Building Code, and the defendants allegedly relied on false and

---

[4] Pedersen was a WVHDF employee and one of three appointed members of the BCAB.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

misleading claims of building code violations to accomplish the demolition.

Finally, Hall contends that all of this allegedly unlawful conduct was sanctioned by Bailey, the City's mayor at the time, when she signed a resolution "authorizing and empowering Defendant Clarksburg's officials and employees to continue participating in WVHDF's Demolition Loan Program and to receive its loan award in the amount of $400,000." (Dkt. No. 35 at 18). According to Hall, the demolition of his property at 531 Milford Street "personally benefitt[ed] Defendant Bailey." (Dkt. No. 35 at 19).

**B.    Procedural Background**

In December 2013 and January 2014, Hall and several other affected property owners filed complaints against the defendants with the West Virginia Fire Commission ("Fire Commission"). In June 2014, the Fire Commission issued its own "Consolidated Complaint and Notice of Hearing" against several defendants, including the City, Barberio, Kesling, and Davis.  It alleged that these defendants "knowingly utilized an unlawful building code, through the actions of unlawful [building code officials], to selectively target specific properties and property owners, to divest them of

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129,
131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

real and personal property without adequate due process of law."[5] (Dkt. No. 35-1 at 5). Additionally, the defendants "utilized the Clarksburg building code program to directly and/or indirectly enrich themselves and others through the use of public funds and the unlawful building code program." (Dkt. No. 35-1 at 5). During oral argument on the parties' pending motions for summary judgment, they informed the Court that, during the pendency of this case, the Fire Commission's complaint was settled without any admission of guilt or liability on the City's part.  As a result of that settlement, moreover, Barberio, Kesling, and Davis turned in all of their building code certifications.

Hall originally filed his complaint on May 30, 2014. The parties then sought a stay, which the Court granted. Subsequently, they requested that the Court lift the stay and allow the case to proceed. After lifting the stay, the Court granted Hall's request for leave to amend his complaint in order to address the

---

[5] Hall has adopted the Fire Commission's allegations of fact and conclusions of law in his amended complaint. (Dkt. No. 35 at 20).

deficiencies outlined in the defendants' motion to dismiss.[6] Hall filed his amended complaint on February 20, 2015.

The amended complaint asserts five causes of action. Three involve claims arising under 42 U.S.C. § 1983, but alleging different theories of liability. These include municipal liability ("Count One"), official, individual, and supervisory liability ("Count Two"), and conspiracy liability ("Count Three"). Count Four alleges liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and 1964(c). Finally, Count Five seeks a declaratory judgment that "all amounts assessed against [Hall] for demolition costs, assessments and fines by Defendant Clarksburg are improper, unlawful, and not due and owing." (Dkt. No. 35 at 31). On March 12, 2015, the defendants moved to dismiss Hall's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6), which the Court denied.

Thereafter, on May 16, 2016, Hall filed his motion for summary judgment, seeking partial summary judgment on Count One of his complaint for municipal liability under § 1983, pursuant to Monell, as well as on Count Two for official, individual, and supervisory

---

[6] The Court denied as moot the defendants' original motion to dismiss.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

liability under § 1983 (dkt. no. 137). He sought summary judgment only as to the City, Howe, Barberio, Davis, and Kesling. On the same date, each of the defendants moved separately for summary judgment on all of Hall's claims (dkt. nos. 121, 123, 125, 127, 129, 131, 133, and 135). All of the defendants' motions share some common bases that the Court finds to be dispositive, including a statute of limitations defense and a defense that Hall lacked standing.

## II. LEGAL STANDARD

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129,
131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

determination of whether genuine issues of triable fact exist.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct.
2505, 2510 (1986).

The moving party bears the initial burden of informing the
Court of the basis for the motion and of establishing the
nonexistence of genuine issues of fact. Celotex Corp. v. Catrett,
477 U.S. 317, 323, 106 S. Ct. 2548, 2556 (1986). Once the moving
party has made the necessary showing, the non-moving party "must
set forth specific facts showing that there is a genuine issue for
trial." Anderson, 477 U.S. at 256, 106 S. Ct. at 2510 (internal
quotation marks and citation omitted). The "mere existence of a
scintilla of evidence" favoring the non-moving party will not
prevent the entry of summary judgment; the evidence must be such
that a rational trier of fact could reasonably find for the
nonmoving party. Id. at 248-52.

### III. DISCUSSION

On September 6, 2016, the Court heard oral argument on the
parties' competing motions for summary judgment, following which it
indicated from the bench that it would **DENY** Hall's motion and **GRANT**
all of the defendants' motions.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

## A.    Statute of Limitations

The applicable statute of limitations had run prior to the filing of Hall's complaint. Section 1983 provides a federal cause of action but looks to state law to establish the applicable statute of limitations. See Wallace v. Kato, 549 U.S. 384, 387 (2007). The parties agree that, under West Virginia Code § 55-2-12, the applicable period for the Hall's claims is two years.

"The applicable statute of limitations begins to run once a claim accrues, and federal law controls that determination." A Society Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). "A civil rights claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (internal quotation omitted).

Hall argues, however, that the continuing violation doctrine, which provides that the statute of limitations may be tolled by a continuing unlawful or tortious practice, saves his claims. See id. Generally, to "establish a continuing violation[,] the plaintiff must establish that the unconstitutional or illegal act was a fixed and continuing practice." Id. (quoting Nat'l Adver. Co. v. City of

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129,
131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

Raleigh, 947 F.2d 1158, 1166 (4th Cir. 1991)). Accordingly, if "the illegal act did not occur just once, but rather 'in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation.'" Id. (quoting City of Raleigh, 947 F.2d at 1167).

The Fourth Circuit Court of Appeals has established a clear distinction between "continual unlawful acts" and "continuing ill effects of an original violation because the latter do not constitute a continuing violation." Id. In A Society Without a Name, the plaintiff alleged that Virginia had unlawfully relocated a homeless center at a far distance for discriminatory purposes. Because the Society knew or should have known of the allegedly discriminatory action by February 5, 2007, they were required to file suit no later than February 5, 2009. Id. at 348. Nonetheless, the Society argued that a continuing violation existed because, during the statutory period, the state had persuaded organizations to move feeding services to the distant shelter and had required homeless people to register at that new location.

The court concluded that these actions, all of which had occurred in the statutory period, "[do] not amount to a continuing

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

violation, but rather amount[] to the continuing effect of the original decision to locate the [shelter where it had]." Id. (citing Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 189 (4th Cir. 1999) ("At bottom, appellants' continuing violation argument rests on the alleged ongoing effects of the original decision to locate the highway in proximity to Jersey Heights.")). Therefore, the court concluded that, because the plaintiffs had filed suit on February 17, 2009, twelve days beyond the statutory period, their claims were time barred. Id.

Likewise, in the case at bar, characterization of the City's alleged violations as a continuing violation is entirely premised on ongoing effects of the City's original decision to amend the ordinances and building code. Hall was aware as early as 2003 as to some of the amendments and as early as 2009 as to the others. Further, he has alleged that the City began to enforce those ordinances against the subject properties as early as 2006. (Dkt. No. 35 at 17). Indeed, the amended complaint lists all of the subject properties and the dates on which action was taken against them. Id. at 17-18. With the exception of a Notice of Violation ("NOV") issued on August 19, 2013, for the 1300 N. 13th St.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

property, all of the actions occurred before May 30, 2012, which is two years prior to the filing of Hall's original complaint.

Although all of these actions, including the final NOV on August 19, 2013, clearly constitute ongoing effects of the original decision to amend the City ordinances, Hall has contended that, because some of the properties remain on the demolition list, the continuing violation doctrine saves his claims. This argument also fails; their placement on the list is also derivative of the original decision to amend the ordinances.

It is undisputed that Hall had constructive knowledge of the allegedly unlawful amendments to the ordinances in 2003 and in 2009. See Old Home Properties, LLC v. City of Clarksburg, 2015 WL 7628719, at *10 (W.Va. 2015). Further, he had direct knowledge of the allegedly unlawful actions impacting the subject properties as early as 2006. Despite his constructive knowledge and direct personal knowledge, Hall failed to sue the defendants until May 30, 2014, well beyond the date on which his claims first accrued. Furthermore, because the subsequent actions by the code enforcement officers, as well those of the City, all stem from the original decision to amend the ordinances, the continuing violation doctrine

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

does not toll the statute of limitations or otherwise save his claims. Accordingly, the Court **GRANTS** the defendants' motions for summary judgment on all claims based on the statute of limitations defense.

**B.    Standing**

Alternatively, the defendants contend that Hall lacks standing to assert his claims because all of the subject properties were owned by limited liability companies ("LLC") or corporations, of which he was a member or shareholder. Accordingly, they reason that any damages suffered by those corporate entities were not damages to Hall personally.

The Supreme Court of the United States has established a three part test for determining whether a party has standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129,
131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

Here, Hall has not suffered the injury; rather, the injury in fact was suffered by the LLCs or corporations that actually owned the properties. "According to W. Va. Code § 31B-5-501(a) (1996), '[a] member [of a limited liability company] is not a co-owner of, and has no transferable interest in, property of a limited liability company[.]'" Mott v. Kirby, 696 S.E.2d 304, 307 (W.Va. 2010). Indeed, "[a] limited liability company is a legal entity distinct from its members." W. Va. Code § 31B-2-201. Similarly, "[i]t is considered a fundamental rule that a shareholder - even the sole shareholder - does not have standing to assert claims alleging wrongs to the corporation." Ashbaugh v. Corporation of Bolivar, 2012 WL 3935950, at *1 (4th Cir. 2012) (per curiam) (quoting Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel, 20 F.3d 1311, 1317 (4th Cir. 1994)). Accordingly, Hall had no standing to assert his individual claims for damages that were suffered by the LLCs or corporations.

Hall argues that he did in fact personally purchase the subject properties and, regardless of the name of the purchaser, that he "was the owner of such properties and operated his businesses as such." (Dkt. No. 141 at 13). Hall points out that the

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

notices he received from the City were addressed to him personally, indicating that the City never distinguished between him and his companies.

"'It is equally well-settled that the parties' characterization of themselves or their claims is not determinative for federal jurisdiction purposes.'" General Technology Applications, Inc. v. Exro Ltda, 388 F.3d 114, 118 (4th Cir. 2004) (quoting Roche v. Lincoln Prop. Co., 373 F.3d 610, 615-16 (4th Cir. 2004)). Nor would the way in which the City addressed a letter alter the legal nature of the properties' ownership. Finally, Hall's own deposition testimony fails to support his contentions that he personally owned the subject properties. The Court therefore concludes that Hall is unable to assert a claim for damages allegedly suffered by the LLCs or corporations.

Hall next argues that he should be allowed to assert the claims under a reverse veil piercing theory. He cites as support for this theory a lone Minnesota State Supreme Court case, Cargill, Inc. v. Hedge, 375 N.W.2d 477 (Minn. 1985), which laid out three factors to determining whether it is appropriate to pierce the corporate veil:

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

1.    "The degree of identity between the individual and his or her corporation [and] the extent to which the corporation is an alter ego";
2.    Whether piercing the corporate veil would injure third parties, such as creditors; and
3.    Whether there is a "strong public policy" present that would justify piercing the corporate veil.

Id. at 479. Applying these factors, the court in Cargill "reverse pierced" the veil of a corporation that was essentially a family farm.  It did so solely to allow the lone shareholder, Hedges, to apply for a personal homestead exemption to a tax sale, despite the fact that the subject property was owned by the corporation. The court found that Hedges and the corporation were alter egos and that, although some creditors could potentially be harmed, such harm was outweighed by the strong public policy of promoting the homestead exemption law.[7]

    Hall's argument for following Cargill fails under the circumstances of this case. First, the Cargill court's holding is not binding on this Court. Next, Cargill explicitly noted that "a reverse pierce should be permitted in only the most carefully limited circumstances." Id. at 480. Further, its reasoning relied heavily on the strong public policy of Minnesota supporting the

--------

[7]The Cargill court also placed weight on the fact that Hedges actually lived in the home in question. 375 N.W.2d at 477.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129, 131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

homestead exemption in order to justify piercing. Here, there is no similar public policy at work that would justify reverse piercing, nor do there appear to be any creditors who may be harmed. Indeed, the Supreme Court of Appeals of West Virginia has affirmed the Circuit Court of Harrison County's decision holding that Hall's challenges to the amended ordinances on procedural grounds were barred as against public policy, thereby justifying summary judgment in a separate related case. See Old Home Properties, 2015 WL 7628719, at *11.

Finally, the United States Supreme Court long ago addressed the propriety of piercing the corporate veil:

> While corporate entities may be disregarded where they are made the implement for avoiding a clear legislative purpose, they will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as a separate legal person. One who has created a corporate arrangement, chosen as a means of carrying out his business purposes, does not have the choice of disregarding the corporate entity in order to avoid the obligations which the statute lays upon it for the protection of the public.

Schenley Distillers Corp. v. U.S., 326 U.S. 432, 437 (1946).[8]

---

[8]It should be noted that reverse corporate veil piercing is generally intended to provide an avenue for creditors to reach the assets of a debtor that have been improperly shielded by an LLC or

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129,
131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

Hall, who has long benefitted from the protections and benefits of the LLC and corporate structures used to purchase, hold, and operate these properties, now seeks to disregard those entities for his own personal benefit. This he cannot do. Furthermore, there is no strong public policy favoring reverse piercing in this case. Accordingly, Hall can not avail himself of a reverse corporate veil piercing theory.

### V. CONCLUSION

As discussed, the statute of limitations has run on Hall's claims. Alternatively, he lacks standing to bring those claims. Either of these grounds is adequate to support summary judgment in favor of the defendants. Therefore, the Court **GRANTS** all of the defendants' motions for summary judgment on all claims, **DENIES**

---

corporation:
> In a reverse piercing action, however, the plaintiff seeks to reach the assets of a corporation to satisfy claims against a corporate insider. This action, sometimes referred to as "outsider reverse piercing," achieves goals similar to those served by traditional piercing actions—namely, to prevent abuses of corporate or partnership structures.

C.F. Trust, Inc. v. First Flight Ltd. Partnership, 111 F.Supp.2d 734, 740 (E.D.Va. 2000). Allowing a member or shareholder to use reverse veil piercing for their own personal gain would not comport with its purpose.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT [DKT. NOS. 121, 123, 125, 127, 129,
131, 133, AND 135], DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT [DKT. NO. 137], AND DISMISSING CASE WITH PREJUDICE**

Hall's motion for summary judgment, and **DISMISSES** this case **WITH
PREJUDICE.**

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order
to counsel of record and to enter a separate Judgment Order.

DATED: September 30, 2016.


                                    /s/ Irene M. Keeley
                                    IRENE M. KEELEY
                                    UNITED STATES DISTRICT JUDGE